UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, | |
| Plaintiff, | 25-CV-2173 (RA) |
| v. | OPINION AND ORDER |
| CALTEC CORP., | |
| Defendant. | |

RONNIE ABRAMS, United States District Judge:

This is an insurance coverage dispute.  Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley") brings this declaratory judgment action against Defendant Caltec Corp. ("Caltec").  Mt. Hawley alleges that, under the terms of the insurance policy it sold Caltec, Mt. Hawley has no duty to defend or indemnify Caltec in an underlying action, brought in California state court, regarding a construction project for which Caltec was the general contractor.  Before this Court is Caltec's motion to dismiss for improper venue or, alternatively, motion to transfer to the Central District of California, where Caltec is based, where the insurance policy was negotiated and signed, and where the events at issue in the underlying action occurred.  Mt. Hawley responds that the insurance policy's forum-selection clause mandates that this action be heard in the courts of New York.  For the reasons that follow, the Court will transfer this action to the Central District of California pursuant to 28 U.S.C. § 1404.

## BACKGROUND

Mt. Hawley, an insurance company domiciled in Illinois, issued a commercial general liability insurance policy (the "Policy") to Caltec, a corporation domiciled in California, covering the period from May 13, 2022 to May 13, 2023.  Compl. ¶¶ 4–6, 10.  Caltec does business as a general contractor for construction projects.  *See* Compl, Ex. 2. ("Underlying Compl.") ¶ 8.

On June 8, 2022, Caltec contracted with the Regents of the University of California (the "Regents"), who are not a party to this lawsuit, to perform certain construction work on a building at the University of California, Riverside.  Underlying Compl. ¶¶ 1,8.  The Regents allege that, over the course of the project, significant water damage occurred to the building as a result of Caltec's failure to take appropriate measures to protect the building during construction.  *Id.* ¶¶ 11–12.  Caltec is currently being sued by the Regents for this failure in the Superior Court of the State of California, in Riverside County, where the construction project occurred.

Mt. Hawley is currently defending Caltec, pursuant to the Policy, in this underlying action. Compl. ¶ 1.  Mt. Hawley seeks a declaratory judgment that "no potential for coverage or actual coverage under the Policy exists for the Underlying Action, and that Mt. Hawley therefore owes no duty to defend and indemnify Caltec from or against liability it may sustain in the Underlying Action." *Id.* ¶ 3; *see id.* ¶¶ 33–37.  If such a declaratory judgment is issued, Mt. Hawley also seeks to recoup the legal expenses it has incurred to defend Caltec in the underlying action.  *Id.* ¶¶ 38–43.

On this motion, the Court is being asked to address whether this suit is properly in the Southern District of New York.  Mt. Hawley argues that it is, in light of the forum-selection clause and choice-of-law provisions contained in the Service of Suit and Conditions Endorsement, which read as follows:

> **AA. Jurisdiction and Venue.** In the event of any litigation involving any matter arising out of or related to this Policy, it is agreed that the "Insured" shall submit to the jurisdiction of New York state and New York federal courts, and shall comply with all the requirements necessary to give such courts jurisdiction. Any litigation initiated by any "Insured" against the Company shall be brought only in the state or federal courts of New York. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court in that state.

**BB. Choice of Law.** All matters arising from or relating to this Policy, including, without limitation, its procurement, formation and issuance and all matters related to the validity, interpretation, performance and enforcement of this Policy or any part of it shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

Compl. Ex.1, at 76.  Mt. Hawley argues that this suit must be brought in New York pursuant to the Policy's forum-selection clause and New York General Obligations Law § 5-1402, which permits "parties who engage in significant commercial transactions to select New York law to govern their contractual relationship and to avail themselves of New York courts despite lacking New York contacts." *Raspberry Holdings LLC v. NextBank Int'l Inc.*, 2025 WL 438270, at *13 (S.D.N.Y. Feb. 7, 2025); Compl. ¶ 8; *see IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A.*, 20 N.Y.3d 310, 315–16 (2012).[1]

Caltec disagrees, arguing that California is the appropriate venue for this action.  It has thus moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(3) and the common-law doctrine of *forum non conveniens*, arguing that the Policy's forum-selection clause is unenforceable and that this case should be in California state court.  Dkt. 12 ("Def. Mot."), at 1. Alternatively, Caltec requests that this case be transferred to the Central District of California, which encompasses Riverside County, under 28 U.S.C. § 1404(a).  *Id.*  Mt. Hawley filed an opposition to Caltec's motion, Dkt. 16 ("Pl. Opp'n"), at 1, to which Caltec has replied.  Dkt. 17 ("Def. Repl.").

For the reasons that follow, the Court grants Caltec's motion in part, and will transfer this case to the Central District of California.

---

[1] Unless otherwise indicated, quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

## LEGAL STANDARD

Under Rule 12(b)(3), a complaint may be dismissed for improper venue. The plaintiff "has the burden of pleading venue," although "the Court accepts as true all factual allegations in the non-moving party's pleadings and draws all reasonable inferences in favor of the non-moving party." *Che v. Edlow*, 2025 WL 2695283, at *2 (S.D.N.Y. Sept. 22, 2025).

Under Rule 12(b)(3), dismissal is appropriate "only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). Venue is proper, *inter alia*, in "a judicial district in which [the] defendant resides," 28 U.S.C. § 1391(b)(1), and "an entity with the capacity to sue and be sued in its common name under applicable law . . . shall be deemed to reside, if a defendant, in any jurisdiction in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). A defendant "can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006).

Pursuant to the doctrine of *forum non conveniens*, a court may exercise its discretion to dismiss a claim, even if that "court is a permissible venue with proper jurisdiction over the claim," in favor of an alternate forum. *Wiwa v. Royal Dutch Petrol. Co.*, 226 F.3d 88, 100 (2d Cir. 2000). "The central purpose of a *forum non conveniens* inquiry is to determine where trial will be most convenient and will serve the ends of justice." *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167 (2d Cir. 1991). When the alternate forum is a federal court, the common-law doctrine of *forum non conveniens* is "supplanted" by 28 U.S.C. § 1404(a), which provides a statutory framework to transfer a case for the convenience of the witnesses or parties, and in the interests of

4

justice.  *Cap. Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 607 (2d Cir. 1998).  "The defendant moving for transfer" under Section 1404(a) "must, in essence, demonstrate that transfer is in the best interests of the litigation," based on an assessment of several factors.  *In re Nematron Corp. Sec. Litig.*, 80 F. Supp. 2d 397, 399–400 (S.D.N.Y. 1998); *see also Dow Jones & Co. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 334 (S.D.N.Y. 2025) ("In making determinations of convenience under Section 1404(a), district courts have broad discretion to consider notions of convenience and fairness on a case-by-case basis.").

## DISCUSSION

Caltec urges this Court to find that the Policy's forum-selection clause is unenforceable and that the Complaint should thus be dismissed pursuant to Rule 12(b)(3).  Caltec also moves, in the alternative, to dismiss this case under the doctrine of *forum non conveniens* in favor of California state court or transfer it to the Central District of California pursuant to 28 U.S.C. § 1404(a).  Def. Mot. at 6–10.  The Court holds that transfer to the Central District of California is appropriate under Section 1404(a).

### A.  The Forum-Selection Clause Is Not Presumptively Enforceable as to a Lawsuit Brought by Mt. Hawley Against Caltec

The Court begins by analyzing whether the Policy's forum-selection clause is valid and presumptively enforceable, as the existence of a valid and enforceable forum-selection clause ordinarily "should control questions of venue."  *Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 320 (E.D.N.Y. 2010).  If such a clause exists and selects a New York court, dismissal would be improper under Rule 12(b)(3).  *See Nat'l Union Life Ins. Co. v. Casmilia Res. Ltd.*, 1990 WL 102199, at *4 n.4 (S.D.N.Y. July 11, 1990).  Furthermore, when analyzing a motion to transfer venue under 28 U.S.C. § 1404(a), the presence of a valid and enforceable forum-selection clause leads the Court to perform "a more restrictive analysis" of whether to transfer a case; "in all but

the most unusual cases[,] the interest of justice is served by holding parties to their bargain and upholding the forum-selection clause." *Encompass Aviation, LLC v. Surf Air, Inc.*, 2018 WL 6713138, at *5 (S.D.N.Y. Nov. 30, 2018).

A valid and enforceable forum selection clause "represents the parties' agreement as to the most proper forum" and "should be given controlling weight in all but the most exceptional cases" because enforcement of such clauses "promote[s] the interest of justice." *Atl. Marine*, 571 U.S. at 63. To determine whether a forum-selection clause is presumptively enforceable, courts in the Second Circuit apply a test drawn from *Martinez v. Bloomberg LP*, 740 F.3d 211 (2d Cir. 2014), which asks:

> (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., . . . whether the parties are required to bring any dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable.

*Id.*; *see Du Quenoy v. Am. Univ. of Beirut*, 828 F. App'x 769, 771 (2d Cir. 2020) (summary order).

If a forum-selection clause is valid and presumptively enforceable, it should generally be given effect unless a party can overcome the presumption of enforceability. Under *Martinez*, a party may overcome this presumption "by making a sufficiently strong showing" that "(1) [the clause's] incorporation [into the contract] was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Id.* at 228, *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). If a forum-selection clause is not presumptively enforceable, a court should apply the traditional standards applicable

to a motion to dismiss pursuant to *forum non conveniens* or to transfer venue under 28 U.S.C. § 1404(a).  *See, e.g.*, *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009); *Encompass Aviation*, 2018 WL 6713138, at *5; *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 57–58 (S.D.N.Y. 2001).

Caltec and Mt. Hawley do not appear to dispute that the forum selection clause is presumptively enforceable under *Martinez*.  They are correct that under the first and third prongs of the *Martinez* test, the forum-selection clause was reasonably communicated to Caltec and applies to the parties and claims at issue.  Nonetheless, because the forum selection clause is not mandatory as to litigation brought by Mt. Hawley against Caltec, the Court holds otherwise, and finds the clause is not presumptively enforceable here.

Under New York law, "a forum selection clause is mandatory when the parties agree that a specified forum 'shall' hear a matter or that the forum is 'exclusive.'"[2]  *Spellmans Marine Inc. v. HC Composites L.L.C.*, 178 N.Y.S.3d 379, 383 (Sup. Ct. Suffolk Cnty. 2022) (collecting cases); *see Glob. Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225–26 (2d Cir. 2011).  The New York Court of Appeals has held that a party's agreement to submit to a particular forum's jurisdiction, absent "mandatory language binding the parties to a particular forum," is insufficient to "manifest an intention to limit jurisdiction to a particular forum."  *Brooke Grp. Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534 (1996); *see Macsteel Int'l USA Corp. v. M/V Larch Arrow*, 354 F. App'x 537, 539 (2d Cir. 2009) ("[A] permissive forum selection clause only reflects the

---

[2] Although a federal court should look to federal common law to "determine whether an otherwise mandatory and applicable forum[-selection] clause is enforceable" under the factors articulated in *Martinez*, it should apply state law to interpret the language of a forum-selection clause—that is, to decide whether it is "mandatory or permissive" and "whether the claims and parties involved in the suit are subject to the forum selection clause."  *Martinez*, 740 F.3d at 217–18.  Caltec urges the Court to reserve decision on what substantive law applies to the construction of the Policy's forum-selection clause, apparently because it will seek to challenge the enforceability of the Policy's choice-of-law provision.  Def. Repl. at 5.  The Court will therefore assume, without deciding, that New York substantive law applies to the construction of the Policy's forum-selection clause.

contracting parties' consent to resolve disputes in a certain forum, but does not require that disputes be resolved in that forum."). In other words, under New York law, contractual submission to the jurisdiction of New York courts "does not bind the parties to litigate in a particular forum," or give a plaintiff "the exclusive right to choose a forum unrelated to the dispute." *Id.*; *see John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 53 (2d Cir. 1994) ("[A]n agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion."). And because "jurisdiction may properly be conferred on two or more fora," Caltec's submission to New York's jurisdiction does not preclude a suit against it in an alternative forum. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 387 (2d Cir. 2007).

The forum-selection clause provides, in relevant part, that "in the event of any litigation involving any matter arising out of or related to this policy, it is agreed that the 'Insured' shall submit to the jurisdiction of New York state and New York federal courts, and shall comply with all the requirements necessary to give such courts jurisdiction." Compl. Ex. 1, at 76. It also states that "[a]ny litigation *initiated by any 'Insured' against the Company* shall be brought only in the state or federal courts of New York." *Id.* (emphasis added). Here, Caltec is an "Insured" and Mt. Hawley is the Company, so the Policy only creates a mandatory obligation that "litigation initiated" by *Caltec* against *Mt. Hawley* be brought in New York. Compl. Ex. 1, at 76.

The Policy does not have analogous and "specific language of exclusion" as to claims brought by Mt. Hawley against Caltec. *John Boutari & Son*, 22 F.3d at 53. Caltec has only agreed to submit to the jurisdiction of New York state and federal courts: it "shall submit," and in fact has submitted, to the jurisdiction of these courts if litigation is brought by Mt. Hawley here. Compl. Ex. 1, at 76. "Although the word 'shall' is a mandatory term, here it mandates nothing

8

more than that the [New York] courts have jurisdiction." *John Boutari & Son*, 22 F.3d at 53. Without more, the language in the Policy is insufficient to mandate that suits by Mt. Hawley against Caltec, such as the instant case, be brought in New York. In *Reliance Insurance Co. v. Six Star*, for example, now-Chief Judge Swain applied New York law to conclude that a forum selection clause with nearly identical language was permissive rather than mandatory "because the requirement of a clear indication of exclusivity had not been met." 155 F. Supp. 2d at 58. The same is true here, and the Policy's forum-selection clause, as applied to suits by Mt. Hawley against Caltec, is thus permissive, rather than mandatory.

Mt. Hawley's arguments to the contrary are not persuasive. It fails to mention that, under the language of the forum selection clause, only Caltec is bound to initiate litigation against Mt. Hawley in "the state or federal courts of New York." Compl. Ex. 1, at 76; *see* Pl's Opp'n at 9. And the cases it relies on have meaningfully different language in their operative forum-selection clauses which, unlike here, serve to make venue in a particular jurisdiction mandatory. *See Glob. Facilities Managers Ltd. v. Command7 Servs. Grp., LLC*, 2024 WL 5159464, at *1 (E.D.N.Y. Dec. 18, 2024) ("[S]ole jurisdiction and venue . . . shall be the state and federal courts sitting in Salt Lake County"); *Glob. Satellite Commc'n Co. v. Starmhill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) ("Venue shall be in Broward County"); *TecFolks, LLC v. Claimtek Sys.*, 906 F. Supp. 2d 173, 175 (E.D.N.Y. 2012) ("[T]he forum and place of any dispute and resolution of any dispute . . . shall be in the State of California").[3]

---

[3] Mt. Hawley also directs the Court to 68 opinions and orders "upholding Mt. Hawley's forum selection clause or substantially similar provisions" in suits regarding the scope of Mt. Hawley's obligations under a given insurance contract. Pl. Opp'n at 3 n.2; *see id.*, Ex. 1. In each and every one of those cases, however, Mt. Hawley was the defendant, rather than the plaintiff. In that posture, when Mt. Hawley is sued by an "Insured," the Court agrees with other cases holding that the forum-selection clause "is mandatory." *Burk Holding Co. v. Mt. Hawley Ins. Co.*, 2023 WL 183898, at *3 (E.D. La. Jan. 13, 2023) (collecting cases); *see, e.g.*, *Storm Damage Solns., LLC v. Mt. Hawley Ins. Co.*, 2022 WL 2173075, at *1 (N.D. Fla. May 9, 2022) (same); *William B. Coleman Co. v. Mt. Hawley Ins. Co.*, 2022 WL 2806438, at *2 (E.D. La. July 18, 2022) (same).

Caltec, meanwhile, would have the Court hold that the Policy's forum-selection clause is invalid and unenforceable as to all claims. Its primary argument is that the clause is unenforceable and invalid because its application against Caltec would be "unjust." Def. Mot. at 4–6; Def. Repl. at 2–7. In particular, it argues that application of the forum-selection clause would conflict with California public policy because doing so would "strip Caltec" of certain statutory protections "that California law guarantees." Def. Mot. at 5. These protections appear to be "the ability of insureds to bring bad-faith claims against insurance carriers" under California's Unfair Insurance Practices Act. *Id.* The Court disagrees.

As a preliminary matter, Caltec appears to be conflating a *forum-selection clause* with a *choice-of-law provision*. It is true that the Policy contains both a New York forum-selection clause and a provision selecting New York substantive law. But the forum-selection clause does not mandate the selection of New York substantive law in this diversity case: standing alone, such a provision merely selects New York's conflict-of-law rules, to the extent the clause mandates that a given suit is brought in New York. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97 (1941) (a federal court sitting in diversity applies the conflicts rules of the state in which it sits); *In re Coudert Bros. LLP*, 673 F.3d 180, 186–87 (2d Cir. 2012) (same).

In its briefing, Caltec primarily relies on *North American Elite Insurance Company v. Space Needle, LLC*, 159 N.Y.S.3d 396 (1st Dep't 2021), a New York state case in which a contract's forum selection clause directly conflicted with a foreign jurisdiction's substantive law— a distinctly different situation than that presented in the case at hand. In *Space Needle*, the First Department was faced with a direct conflict between a Washington law forbidding the use of forum-selection clauses for insurance policies sold in Washington and New York's law permitting such clauses. *Id.* at 397. Because the plaintiff in that case "did not demonstrate a likelihood that

10

the New York policy favoring the right to contractual clauses choosing New York law and New York as the exclusive forum for coverage disputes under an insurance contract takes precedence over the Washington state statute prohibiting the inclusion of those clauses in this type of insurance contract," the First Department declined to enforce the forum-selection clause and choice-of-law provision. *Id.* at 399. It held that enforcement of these clauses "may be determined to be unjust because the clauses are void under the Washington law with which Plaintiff agreed to comply." *Id.*

Caltec does not make clear how or why *Space Needle*, a New York Appellate Division case, should enter into the *Martinez* analysis of the enforceability of forum-selection clauses, which is governed by federal law. *Martinez*, 740 F.3d at 217; *see, e.g.*, *Zeppelin Sys. USA, Inc. v. Pyrolyx USA Indiana, LLC*, 2020 WL 1082774, at *4 (S.D.N.Y. Mar. 5, 2020) (noting that federal courts should not be guided by state law as to whether a forum-selection clause is enforceable). Furthermore, Caltec does not point to any authority holding that forum-selection clauses in insurance contracts are generally impermissible as a matter of California law, and the Court is aware of none. The Policy's forum-selection clause thus does not create a conflict between New York and California law of the type analyzed in *Space Needle*.

Caltec also argues that the Court should not enforce this forum-selection clause because it is contrary to California public policy. Def. Mot. at 4–6; Def. Repl. at 5–7. California state courts have articulated a policy against enforcement of forum-selection clauses where doing so "would substantially diminish the rights of California residents," particularly "unwaivable rights created by California statutes." *Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 147 (Cal. Ct. App. 2015) (collecting cases). This argument too fails, as only New York public policy is relevant to the enforceability of the Policy's forum-selection clause.

11

First, California public policy is simply irrelevant to the question of whether the Policy's forum-selection clause is valid and presumptively enforceable. *Martinez* is clear that a state's public policy enters the analysis only where "enforcement [of a forum-selection clause] contravenes a strong public policy of the forum *in which suit is brought.*" *Martinez*, 740 F.3d at 228 (emphasis added). In other words, "in determining whether a forum selection provision is invalid, the Court focuses on the public policy of the *forum state*, not some other state." *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 345 (S.D.N.Y. 2020); *see Zeppelin Sys. USA, Inc.*, 2020 WL 1082774, at *4; *Bankers Healthcare Group, LLC v. TCex, LLC*, 2024 WL 841236, at *9 (N.D.N.Y. Feb. 28, 2024). New York, as Mt. Hawley notes, "has a strong public policy of *enforcing* forum selection clauses so that parties are able to rely on the terms of the contracts they make." *PIRS Cap., LLC v. Chen*, 746 F. Supp. 3d 167, 183 (S.D.N.Y. 2024); *see, e.g.*, *Vandermast v. Wall & Assocs.*, 2022 WL 164307, at *2 (2d Cir. 2022) (summary order); *Brodsky v. Match.com LLC*, 2009 WL 3490277, at *4 (S.D.N.Y. Oct. 28, 2009) (collecting cases).[4]

Second, even if California public policy were relevant, it is not clear which of Caltec's rights would be "diminish[ed]" through the enforcement of the Policy's forum-selection clause, rather than its New York choice-of-law provision. *Id.* Neither Caltec nor Mt. Hawley argue that New York's conflict-of-law rules—as opposed to the Policy's choice-of-law provision—would mandate the application of New York substantive law to Mt. Hawley's claims. It is thus puzzling

---

[4] Caltec references *Seneca Ins. Co. v. Henrietta Oil Co.* 2003 WL 255317 (S.D.N.Y. Feb. 4, 2003) in support of its argument that federal courts should consider the public policy of non-forum states in deciding whether forum-selection clauses are enforceable. *Seneca* held that it would be "unjust" to enforce a forum-selection clause in a case where "all significant contacts" were in a different state. *Id.* at *3. But, as Mt. Hawley observes, that case appeared to turn on a finding that, under *Martinez*, the defendant did "not knowingly . . . consent[]" to the forum-selection clause at the time it purchased the insurance policy at issue, rather than a finding that enforcement of the clause would be against the public policy of the non-forum state. *Id.*; *see also Martinez*, 740 F.3d at 217 (requiring that a forum-selection clause be "reasonably communicated to the party resisting enforcement"). There is no similar circumstance here.

that Caltec would repeatedly claim that "allowing this matter to be heard in New York . . . would strip Caltec of access to [California's] protections." Def. Repl. at 2; Def. Mot. at 5–6.

Finally, Caltec also relies on Judge Subramanian's opinion in *700 Camp Street LLC v. Mt. Hawley Insurance Co.* to argue that a foreign jurisdiction's public policy may invalidate a forum-selection clause. 2024 WL 4300113 (S.D.N.Y. Sept. 26, 2024); Def. Repl. at 4. Caltec dramatically overreads the holding of this opinion—primarily by again confusing a forum-selection clause with a choice-of-law provision. *700 Camp Street* involves a suit by an insured against Mt. Hawley (rather than a suit by Mt. Hawley against an insured), pursuant to a policy with a similar forum-selection clause to that at issue in the instant case. Order and Reasons, *700 Camp Street, LLC*, No. 24-CV-3060 (AS) (S.D.N.Y. Apr. 1, 2024), Dkt. 14. It was transferred into this District from the Eastern District of Louisiana on that basis. *Id.* In it, Judge Subramanian was determining whether that policy's *choice-of-law* clause should be enforced given an apparent conflict between New York and Louisiana's insurance law.[5] *700 Camp Street, LLC*, 2024 WL 4300113, at \*2–3. Simply put, *700 Camp Street* is inapplicable to a dispute over venue.

In sum, although the Court rejects Caltec's claim that the forum-selection clause is invalid, because the Court finds that the clause is permissive, and not mandatory as to claims brought by Mt. Hawley against Caltec, it is not presumptively enforceable. *Cf. Martinez*, 740 F.3d at 227 ("[A] finding that a forum selection clause was reasonably communicated to the resisting party, is mandatory, and encompasses the claims and parties at issue merely gives rise to a presumption of enforceability."). It is, instead, "an expressed preference for a particular venue" to be considered

---

[5] As discussed above, the Policy's choice-of-law provision is relevant only to the task of construing the meaning of the forum-selection clause. Caltec has not identified a conflict between California and New York contract law as to how that clause should be constructed.

13

alongside other factors when analyzing a motion to transfer under Section 1404(a). *Orix Credit All., Inc. v. Mid-S. Mats. Corp.*, 816 F. Supp. 230, 234 (S.D.N.Y. 1993).

### B. Dismissal Under Rule 12(b)(3) or *Forum Non Conveniens* Is Not Warranted

The Court next turns to the relief Caltec seeks. As a preliminary matter, dismissal under Rule 12(b)(3) is not warranted. Such a dismissal is appropriate only where "venue is 'wrong' or 'improper.'" *Atl. Marine*, 571 U.S. at 55. In this case, venue is clearly proper in the Southern District of New York because Caltec has consented to personal jurisdiction in this venue under the Policy's forum-selection clause. *See* 28 U.S.C. § 1391.

"Venue, as with personal jurisdiction, may be created by the contractual agreement of the parties." *Bank of N.Y. Mellon Tr. Co., N.A. v. Gebert*, 2014 WL 1883551, at *4 (S.D.N.Y. May 9, 2014); *see also Colface v. Optique du Monde, Ltd.*, 521 F. Supp. 500, 506 (S.D.N.Y. 1980) ("To consent to personal jurisdiction in the New York courts without also consenting to venue would thus be a meaningless exercise, at least in this case where each party reasonably should have anticipated that venue in this forum would be improper but for such a forum selection clause."). By consenting to personal jurisdiction in New York courts, Caltec is "deemed to reside in this District for the purpose of venue." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Wynn Las Vegas, LLC*, 509 F. Supp. 3d 38, 50 (S.D.N.Y. 2020). Because, for the purposes of Section 1391, the defendant is a resident of this District, it is a proper venue, and this action should not be dismissed under Rule 12(b)(3). 28 U.S.C. § 1391(b)(1); *see Gebert*, 2014 WL 1883551, at *4 ("[Since] the Court has personal jurisdiction by virtue of the forum selection provision, venue is similarly proper.").

Caltec next argues that this case should be dismissed pursuant to the doctrine of *forum non conveniens* in favor of California state court. [6]    The Court disagrees, as Caltec has not met its burden to justify dismissal on these grounds.

The use of *forum non conveniens* in this circumstance appears to be disfavored where a case might otherwise be transferred under Section 1404(a), and where a contractual forum-selection clause does not exclusively select a state, rather than federal, court.    In *Sinochem International Co.*, the Supreme Court stated that "[t]he common-law doctrine of *forum non conveniens* has continuing application in federal courts only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigation convenience best." *Sinochem Int'l Co. v. Malaysa Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *see Atl. Marine*, 571 U.S. at 66 n.8 (observing that *forum non conveniens* might be used to enforce "valid forum-selection clauses pointing to state . . . forums").    Courts and commentators thus indicate that *forum non conveniens* might—"perhaps"—apply where the superior forum is "a state court," but only "under rare circumstances," such as where a forum selection clause exclusively names a state, rather than federal, court.    14D Wright and Miller, Federal Practice and Procedure § 3828 (4th ed. 2025); *see, e.g.*, *Miller Fam. Indus. v. Ives*, 2025 WL 2205937, at *7 (S.D.N.Y. Aug. 4, 2025).    However, where a forum-selection clause merely points to state or federal courts within a given state, it is generally more appropriate to transfer a case to a federal court within that

---

[6] The *forum non conveniens* analysis proceeds in three steps.  First, the Court must "determine the degree of deference to be afforded to the plaintiff's choice of forum."  *Star Colbert v. Dougan*, 724 F. Supp. 3d 304, 319 (S.D.N.Y. 2024); *see Norex Petrol. Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005).  Next, the Court must determine whether an adequate alternative forum exists.  *Star Colbert*, 724 F. Supp. 3d at 319.  Finally, the Court must balance the public and private interest factors articulated by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) that are implicated in the choice of forum.  *Olin Holdings Ltd. v. Libya*, 73 F.4th 92, 109 (2d Cir. 2023); *Norex*, 416 F.3d at 153.  The defendant has the burden of establishing that an adequate alternative forum exists and that the balance of private and public interest factors "tilts heavily" in favor of the alternate forum.  *Star Colbert*, 724 F. Supp. 3d at 319; *see Olin Holdings*, 73 F.4th at 109.  At bottom, the "central purpose of a *forum non conveniens* inquiry is to determine where the trial will be most convenient and will serve the ends of justice."  *R. Maganlal & Co.*, 942 F.2d at 167.

forum than to dismiss that case pursuant to *forum non conveniens* so that it may be brought in state court. *Miller Fam. Indus.*, 2025 WL 2205937, at \*7; *see DarkPulse, Inc. v. FirstFire Glob. Opportunities Fund, LLC*, 2024 WL 1326964 (2d Cir. 2024) (summary order).[7]

At bottom, a defendant "bear[s] the overall burden of showing the circumstances warrant dismissal" under *forum non conveniens*. *BFI Grp. Divino Corp. v. JSC Russian Aluminum*, 481 F. Supp. 2d 274, 280 (S.D.N.Y. 2007). Caltec has made no argument as to why this case belongs in California state court, rather than the Central District of California. Accordingly, it has not carried its burden to show that dismissal under *forum non conveniens* is a more appropriate remedy than transfer to a sister federal court.

## C. Transfer under Section 1404(a) is Warranted

Lastly, Caltec argues, in the alternative, that this Court should transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404(a). Transfer under Section 1404(a) is permitted where, as is the case here, venue is proper in the transferor court.

Because the Policy's forum-selection clause is permissive with respect to the claims at issue in this suit, the Court applies the traditional two-step inquiry to determine whether transfer is appropriate under Section 1404(a). First, it assesses "whether the action could have been brought in the proposed transferee court." *NYC Vision Cap., Inc. v. C21FC, LLC*, 2022 WL 2527611, at \*2 (S.D.N.Y. July 7, 2022). If the defendant has identified an adequate alternative venue for the case—that is, that the instant action could have been brought there—then the Court will proceed to balance the relevant factors to determine if transfer is appropriate. *Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc.*, 202 F. Supp. 3d 399, 405 (S.D.N.Y. 2016). Where,

---

[7] Caltec has not cited any cases in which a federal court dismissed a case under *forum non conveniens* based on a finding that a case should be litigated in a state court: in *Irragorri* and *Norex*, the two cases on which it relies, the alternate forum was a foreign country's courts. *Norex*, 416 F.3d at 157 (Russia); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70 (2d Cir. 2001) (Colombia).

as here, a contract contains a permissive forum-selection clause, a motion to transfer venue under Section 1404(a) is evaluated "in terms of the generally applicable standards." *Blanco v. Banco Indus. de Venezuela*, *S.A.*, 997 F. 2d 974, 980 (2d Cir. 1993).

"Among the factors to be considered in determining whether to grant a motion to transfer venue are, inter alia: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y.C. Vision Cap., Inc.*, 2022 WL 2527611, at *2 (citing *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010)). Additional factors identified by courts, and relevant here, include: (8) "the forum's familiarity with governing law," and (9) "trial efficiency and the interests of justice, based on the totality of the circumstances." *Scherillo*, 684 F. Supp. 2d at 318, *see also Glass v. S&M NuTec*, 456 F. Supp. 2d 498, 501 (S.D.N.Y. 2006); *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 401–402 (S.D.N.Y. 2005). "The party requesting transfer carries the burden of making out a strong case for transfer." *N.Y.C. Vision Cap., Inc.*, 2022 WL 2527611, at *2. Courts in this District, therefore, consistently evaluate transfer requests on a clear and convincing evidence standard, *id.*, and "operate with considerable discretion." *Forjone v. California*, 425 F. App'x 73, 74 (2d Cir. 2011) (summary order). Balancing these factors "is essentially an equitable task," but the Court must be sure to "give due deference to the plaintiff's choice of forum." *Six Star*, 155 F. Supp. 2d at 57. And where, as here, the parties have agreed to a permissive forum selection clause, such a clause "does not prevent a court from ordering a change of venue under 28 US.C. § 1404(a)," although it should still be afforded "significant weight" in

17

the analysis. *Leasing Serv. Corp. v. Patterson Ents.*, 633 F. Supp. 282, 284 (S.D.N.Y. 1986); *In re Lehman Bros. Holdings, Inc.*, 594 B.R. 33, 82 (Bankr. S.D.N.Y. 2018) (collecting cases).

First, it is uncontested that this case could have been brought in the Central District of California. Mt. Hawley is domiciled in Illinois, Compl. ¶ 4, while Caltec is domiciled in the Central District of California, Compl. ¶ 6, so venue would have been proper had this suit been filed there. *See* 28 U.S.C. § 1391(a)(1) (venue is proper in "a judicial district in which any defendant resides").

Second, although some key elements of this case point to New York, such as the Policy's permissive forum-selection clause, as well as Mt. Hawley's choice of forum, those factors are outweighed by important countervailing considerations, such as the convenience of the witnesses (particularly third-party ones) and the locus of operative facts, both of which favor California. Accordingly, this Court will transfer this case to the Central District of California.

As noted, several of these factors favor retention of this case. For one, a permissive forum selection clause, such as that in the Policy, "is determinative of the convenience to the parties," because Caltec, the party seeking transfer, "initially accepted the jurisdiction of the courts of New York." *Orix*, 816 F. Supp. at 234; *Six Star*, 155 F. Supp. 2d at 58. Because a permissive forum selection clause contemplates that, "absent countervailing considerations, this District is a convenient forum for litigation," a defendant's location, "of which they were presumably aware at the time" the agreement was executed, "would not ordinarily justify a transfer." *JP Morgan Chase Bank, N.A. v. Coleman-Toll Ltd. P'ship*, 2009 WL 1457158, at *6 (S.D.N.Y. May 26, 2009).

Mt. Hawley's choice of forum, too, weighs in favor of maintaining venue here, although in a limited way. The Second Circuit has held that a plaintiff's choice of forum is "presumptively entitled to substantial deference." *Gross v. Brit. Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004);

*see Manchin v. PACS Grp., Inc.* 2025 WL 1276569, at *8 (S.D.N.Y. May 1, 2025).  This deference is attenuated, however, where the plaintiff's choice of forum is not the plaintiff's home state or where it is engaged in ongoing business activity.  *See Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613 (S.D.N.Y. 2016); *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 96 (S.D.N.Y 1995).  It is also less relevant where the case lacks "material or significant contacts" with the forum state.  *See Kwik Goal, Ltd. v. Youth Sports Publ'g, Inc.*, 2006 WL 1517598, at *2 (S.D.N.Y. May 31, 2006); *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 348–49 (E.D.N.Y. 2012) (collecting cases).  As Caltec rightly observes, nothing material about this case points to New York besides the Policy's permissive forum selection clause and choice-of-law provision.  Mt. Hawley is not domiciled in New York, and did not write the insurance policy at issue in New York; indeed, no events at issue in this litigation occurred in New York.  As a result, this factor only slightly weighs in Mt. Hawley's favor.

Other factors are neutral.  As previously discussed, the Court has not yet passed on the validity of the Policy's choice-of-law provision selecting New York law.  But, even assuming New York law applies (which Caltec appears to dispute), it is not a significant factor in the analysis, as "federal courts commonly apply state substantive law, which may not be the law of the state in which the federal court sits."  *Kwik Goal*, 2006 WL 1517598, at *4 (finding this factor to be neutral).  It is for this reason that "familiarity with the governing law as a factor in determining transfer of venue is generally given little weight in federal courts."  *Mastr Asset Backed Sec. Tr. 2007-WMC1, ex rel. U.S. Bank Nat'l Ass'n v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 423 (S.D.N.Y. 2012); *see also Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006).  *But see JVC Pro. Prods., Co. v. HT Elecs., Inc.*, 1999 WL 108020, at *2 (S.D.N.Y. Dec. 1, 1999) (noting that the court's greater familiarity with New York law "than a

federal court sitting in California" weighs in favor of maintaining venue in this District). The parties have not raised any particular wrinkles in this otherwise "straightforward New York contract law" to be applied in construing the Policy that might weigh in favor of keeping the case within this District. *WMC Mortg.*, 880 F. Supp. 2d at 423; *see Schweitzer v. Nevels*, 669 F. Supp. 3d 242, 248 (S.D.N.Y. 2023) (noting this factor's irrelevance where "no complex questions of foreign law are involved"). Furthermore, the Court has no doubt that the Central District of California can capably apply New York contract law.

The location of documents, too, is a neutral factor. The parties do not provide any detail as to the documents that might be relevant to this case, and whether they are available electronically. Where neither party can point to a specific, tangible piece of evidence present in either forum, this factor is viewed as weighing neutrally. *Schweitzer*, 669 F. Supp. 3d at 248; *Glotser v. Boardwalk Regency LLC*, 2023 WL 2162063, at *5 (S.D.N.Y. Feb. 22, 2023). Likewise, the parties make no argument regarding their relative means, and so this factor is also neutral. *See Glotser*, 2023 WL 2162063, at *6 ("[A] party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances.").

Other factors weigh more heavily in favor of transfer. "The convenience of witnesses is typically regarded by courts as the most important factor in considering a motion to transfer pursuant to § 1404(a)." *AIG Fin. Prods. Corp. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 675 F. Supp. 2d 354, 369 (S.D.N.Y. 2009); *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d at 400 ("The convenience . . . of witnesses is considered the essential criteri[on] under the venue statute."). Mt. Hawley does not dispute, as Caltec argues, that "[a]ll witnesses" in this matter, including third-party witnesses, "are in California, including Caltec's personnel, subcontractors,

20

representatives of the University of California, and anyone [else] with personal knowledge of the alleged underlying claims." Def. Mot. at 10; Def. Repl. at 7–8. "In a motion to transfer venue, the movant bears the burden of identifying any and all potential witnesses who would be inconvenienced if the suit were to remain in the forum chosen by the plaintiff." *Caldwell v. Snip-N-Slide Recs., Inc.*, 2011 WL 3251502, at *3 (S.D.N.Y. July 26, 2011). Ordinarily, the moving party must "clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Freeplay Music*, 195 F. Supp. 3d at 617. But that general principle appears to be for the Court's benefit when it is called to balance the convenience of witnesses in multiple jurisdictions. Here, where all third-party witnesses, such as Caltec's subcontractors and representatives of the University of California, appear to be in California, this factor weighs in favor of transfer, particularly where those third-party witnesses live "further than 100 miles from this District" and therefore "cannot be subpoenaed for trial." *Cohen v. Am. Nat'l Red Cross*, 1992 WL 51565, at *2 (S.D.N.Y. Mar. 13, 1992); *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 442 (E.D.N.Y. 2012) (similar).

The same is true for the locus of operative facts, which is also a "primary factor in determining a [S]ection 1404(a) motion to transfer." *Delacruz v. Giermak*, 2021 WL 5871424, at *2 (S.D.N.Y. Nov. 12, 2021). Courts in this District have held that this factor "substantially favors transfer from this [D]istrict when a party has not shown that any of the operative facts arose in the Southern District of New York." *Gaynor v. Diamond*, 2025 WL 2256662, at *10 (S.D.N.Y. Aug. 7, 2025); *see S.E.C. v. Hill Int'l, Inc.*, 2020 WL 2029591, at *4 (S.D.N.Y. Apr. 28, 2020). Furthermore, in a contract case such as this, "the focus is on the locations where the contract was negotiated or executed, and where it was to be performed." *Stonegardens Advisory LLC v. DeepMedia.AI*, 2024 WL 5047628, at *12 (S.D.N.Y. Dec. 9, 2024). As previously discussed, all

of the underlying events, including the construction project at issue in the underlying action in state court, and the state court proceeding itself, are located in California, and Caltec appears to have purchased the Policy through a Californian insurance broker. Compl. ¶¶ 18–32; *id*. Ex. 1 at 3. The "center of gravity of the litigation—the core determination under § 1404(a)—is," therefore, the Central District of California. *Gaynor*, 2025 WL 2256662, at *11.

In sum, the relevant factors, when viewed together, weigh in favor of transferring this case to the Central District of California. The convenience of witnesses and the locus of operative facts all favor transfer, and outweigh the countervailing factors, which are the convenience of the parties (as expressed in the forum-selection clause) and Mt. Hawley's choice of forum. *See, e.g.*, *Guardian Life Ins. Co. of Am. v. Coe*, 724 F. Supp. 3d 206, 215 (S.D.N.Y. 2024) (granting motion to transfer where "the critical witnesses"—namely, those that signed the contract at issue in the case—all resided in the alternate forum); *Rindfleisch v. Gentiva Health Sys.*, 752 F. Supp. 2d 246, 262 (E.D.N.Y. 2010) ("[T]he deference that typically would be owed to plaintiffs' choice of forum is significantly diminished in this case because plaintiffs do not reside in this District[,] . . . this district has little or no connection to the operative facts in this case[,] [and] . . . the witnesses who can provide the most material testimony in this case reside in the Northern District of Georgia"); *Nieves v. Am. Airlines*, 700 F. Supp. 769, 772 (S.D.N.Y. 1988) (transfer appropriate where the "underlying events all occurred" in and the witnesses all live in the vicinity of the transferee forum.).

## CONCLUSION

For the reasons set forth above, the Court grants Caltec's motion to transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404. The Clerk of Court is directed to

terminate the pending motion at Dkt. 11 and transfer this case in its entirety to the United States

District Court for the Central District of California.

SO ORDERED.

Dated:    March 6, 2025
          New York, New York

                                        Ronnie Abrams
                                        United States District Judge

23